UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS TABI,<br><br>                    Plaintiff,<br><br>          v.<br><br>SCOTT BAKER, et al.,<br><br>                    Defendants. | Case No. 8:20-cv-00323-VBF-JC<br><br>AMENDED/SUPERSEDING REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE<br><br>[DOCKET NO. 151] |

This Amended/Superseding Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    SUMMARY

On September 6, 2022, Plaintiff Francois Tabi, who is proceeding *pro se* and has paid the filing fee, filed the operative revised Second Amended Complaint ("Second Amended Complaint" or "SAC") which remains pending against three Defendants – Santa Ana College Police Officers Scott Baker, Christopher Luzader, and Ray Stowell – and, in its remaining claims which arise under 42 U.S.C. § 1983 ("Section 1983"), sues such Defendants in their individual capacities, seeking

actual and punitive damages and injunctive relief, for retaliating against Plaintiff for exercising his right to free speech in violation of the First Amendment.  (Docket ("Dkt.") Nos. 118, 123).[1]  On April 5, 2023, Defendants filed an Answer to the remaining portions of the Second Amended Complaint.  (Dkt. No. 136).

On September 19, 2023, Defendants filed a Motion for Summary Judgment ("Motion") with a Memorandum of Points and Authorities ("Mot. Memo"), a Separate Statement of Undisputed Material Facts, a Declaration of Daniel S. Modafferi ("Modafferi Decl.") with an exhibit ("Modafferi Ex. 1"), a Declaration of Christopher Luzader ("Luzader Decl."), and a Proposed Judgment.  (Dkt. No. 151).  On October 20, 2023, Plaintiff filed a Memorandum of Points and Authorities in Opposition to the Motion ("Opp. Memo") with a Statement of Genuine Disputes of Material Facts and a Declaration of Francois Tabi ("Tabi Decl.").  (Dkt. No. 153).  On October 27, 2023, Plaintiff filed a Notice of Errata and Correction amending his Statement of Genuine Disputes of Material Facts with exhibits ("Tabi Ex.").  (Dkt. No. 155).  On November 1, 2023, Defendants filed a Reply.  (Dkt. No. 157).

On March 11, 2024, the Court filed a Report and Recommendation recommending that Defendants' Motion be denied.  (Dkt. No. 160).  On March 25, 2024, Defendants filed Objections to the Report and Recommendation.  (Dkt. No. 162).

The Court now issues this Amended/Superseding Report and Recommendation to address Defendants' Objections and to make certain revisions to the original Report and Recommendation, but the ultimate recommendation remains the same.

---

[1]The initial Second Amended Complaint was incorrectly labeled "First Amended Complaint."  (Dkt. No. 118 at 1).  The revised Second Amended Complaint corrected this mistake, but made "no other changes."  (Dkt. No. 123 at 2-3 (as paginated on the Court's electronic docket)).  On March 22, 2023, the District Judge dismissed the other claims and defendants named in the Second Amended Complaint.  (Dkt. Nos. 131, 135).

## II.    SUMMARY OF FACTS

On February 15, 2018, Plaintiff went to Santa Ana College to collect signatures for California ballot measures.  (Tabi Decl. ¶¶ 4-5).  Once on campus, Plaintiff went to the Community Services Office ("the Office") to register to engage in free speech activities.[2]  (Luzader Decl. ¶ 4; Tabi Decl. ¶ 4).  This much is undisputed.  However, the parties disagree on much of what occurred between Plaintiff's arrival at the Office and his return to his vehicle.

### A.    Defendants' Version of the Events

According to Officer Luzader:  At approximately 11:55 a.m., Program Coordinator Lithia Williams called the Santa Ana College Safety Department ("Safety Department") and requested assistance from Campus Security Officers because Plaintiff was being loud and uncooperative and disrupting the orderly operations of the Office.[3]  (Luzader Decl. ¶ 4).  Lieutenant Baker and Officers Stowall and Luzader went to the Office in response to the call for assistance.[4]

---

[2]Plaintiff refers to the Office as the "Facilities Office."  (Tabi Decl. ¶ 4).  Any dispute as to the Office's name is not material.

[3]In his Opposition, Plaintiff claims Defendants have falsified the facts.  (Opp Memo at 9, 12).  However, the Court cannot weigh the parties' credibility in deciding the pending Motion; credibility determinations are for the jury, not a court ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Estate of Lopez by and through Lopez v. Gelhaus, 871 F.3d 998, 1009 n.10 (9th Cir. 2017), cert. denied, 138 S. Ct. 2680 (2018); see also Fuller v. Idaho Dep't of Corrs., 865 F.3d 1154, 1161 (9th Cir. 2017) ("In assessing whether a genuine issue of material fact exists for trial, we do not weigh the evidence, nor make factual or credibility determinations."), cert. denied, 584 U.S. 904 (2018); Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017) (discounting of inmate's evidence "constitutes the sort of credibility finding properly left for a jury"); Nelson v. Davis, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant summary judgment based on his determination that one set of facts is more believable than another.").

[4]It is undisputed that Baker, Luzader and Stowell were working as Campus Safety Officers on February 15, 2018, and that the job of a Campus Safety Officer includes "maintaining the safety and security of students, staff, and visitors, as well as District facilities, grounds,

(continued...)

(Luzader Decl. ¶¶ 4-5).  When they arrived, Officers Stowall and Luzader attempted to speak to Plaintiff, but Plaintiff was uncooperative, loud, angry and belligerent towards them and would not listen to anything they said.[5]  (Luzader Decl. ¶ 5).  Based on this behavior and Williams' report, Officer Luzader concluded Plaintiff's conduct was disruptive to the orderly conduct of business in the Office.  (Luzader Decl. ¶ 6).  As a result, Officers Stowall and Luzader informed Plaintiff that consent for him to remain on the Santa Ana College campus had been withdrawn, and they ordered Plaintiff to retrieve his belongings and leave the campus.  (Luzader Decl. ¶ 7).  The Officers then escorted Plaintiff to his vehicle and watched him exit the campus.  (Luzader Decl. ¶ 8; Modafferi Decl. ¶ 3; Modafferi Ex. 1).

### B.    Plaintiff's Version of the Events

According to Plaintiff:  Once he arrived on campus, he went to the Office in an attempt to comply with the College's rules and regulations regarding free speech activities.  (Tabi Decl. ¶¶ 4, 35).  Plaintiff proceeded to the front desk, as he had many times before,[6] and stated "'I am here to engage in free speech activities.'"[7] (Tabi Decl. ¶ 4).  Plaintiff then filled out the requested forms and provided Office employees with his California identification card and samples of the ballot

---

[4](...continued)
materials, and equipment."  (Luzader Decl. ¶¶ 2-3).  The parties do not discuss whether Campus Safety Officers are sworn police officers.  Nor is there any suggestion that Campus Safety Officers should be treated differently than sworn police officers for purposes of the issues discussed herein.

[5]Officer Luzader provides no other details.  He only conclusorily asserts that Plaintiff "was loud, angry, and belligerent toward Officer Stowell and me."  (Luzader Decl. ¶ 5).

[6]Plaintiff stated he has engaged in free speech activities at California colleges "for some 40 years[,]" including visiting Santa Ana College for almost 23 years.  (Tabi Decl. ¶ 3; Tabi Ex. D).

[7]Plaintiff states he did not need to register for free speech activities on February 15, 2018, but was not informed of this change in the rules.  (Tabi Decl. ¶ 34).

measures he intended to circulate on campus.  (Tabi Decl. ¶ 5).  Although registration for free speech activity is "a simple matter" and "a mere formality" that "should take twenty minutes or less[,]" Plaintiff waited over an hour for his application to be processed because employees expended considerable time photocopying every page of the ballot measures.  (Tabi Decl. ¶¶ 6-7; Tabi Ex. E).

After waiting for over an hour, Plaintiff informed the employees that in January 1998, the College "had imposed [on Plaintiff] a fraudulent and discriminatory" $1,000,000 insurance requirement to impede Plaintiff's free speech activities even though other similarly-situated people were not subject to such a requirement.  (Tabi Decl. ¶ 7).  Plaintiff then asked Office employees to show him the College's rules and regulations pertaining to free speech activities so both he and they could comply with those rules.  (Tabi Decl. ¶ 8).

The employees provided Plaintiff with a copy of the rules and regulations and a free speech permit bearing Plaintiff's name.  (Tabi Decl. ¶ 9).  Plaintiff then asked for the free speech area, and someone offered to walk Plaintiff to the area.  (Tabi Decl. ¶ 9).  No Office employee complained to Plaintiff about a disruption of public order.  (Tabi Decl. ¶ 9).

While exiting the Office, Plaintiff met Officers Luzader and Stowell, and they stated "'We will take you to the free speech area[.]'"[8]  (Tabi Decl. ¶ 10).

---

[8]In his Declaration, Plaintiff states he encountered the Officers after they "had walked up the stairs towards the facility office" (Tabi Decl., ¶ 10), which strongly implies the Officers had not yet arrived at the Office when Plaintiff encountered them.  (See Oxford English Dictionary, https://www.oed.com/dictionary/toward_prep?tab=meaning_and_use#18121848 (last visited June 5, 2024) (when used as a preposition describing motion, toward means "[i]n the direction of; so as to approach (but not necessarily reach: thus differing from to[])")); (see also Tabi Decl., p. 4 heading "Plaintiff Departs the . . . Office Seemingly on Amicable Terms with Office Employees"); Anderson, 477 U.S. at 255 (on summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant).  The Officers object to this inference, arguing the evidence is undisputed that they encountered Plaintiff while he was still in the Office.  (Objections at 2; see also Luzader Decl., ¶ 5).  But even if this is the case, it does not change the
(continued...)

Plaintiff responded "'I do not want the police around me[.]'"  (Tabi Decl. ¶¶ 10, 32).  Despite Plaintiff informing Officers Luzader and Stowell that he did not want their company, the two officers "imposed themselves on" Plaintiff.[9]  (Tabi Decl. ¶ 11).  Officers Luzader and Stowell did not mention any disturbance of public order or any crime they were trying to prevent, but instead falsely told Plaintiff they would lead him to the free speech area.  (Tabi Decl. ¶ 13).

Officers Luzader and Stowell did not take Plaintiff to the free speech area, but instead took him to a secluded area opposite the free speech area and addressed Plaintiff in a manner Plaintiff considered "humiliating, degrading and insulting[,]" upbraiding and harassing Plaintiff for saying he did not want the police around him.  (Tabi Decl. ¶ 14).  Plaintiff asserts that the two officers did this to put him in his "'rightful place'" and "strip [him] of all dignity and humanity."  (Tabi Decl. ¶ 15).  Plaintiff responded, "'Where is the free speech area[?] . . .  If you do not take me to the free speech area immediately, I will leave this place.  I did not come to this College so that I may be harassed and insulted by white Police Officers[.]'"  (Tabi Decl. ¶¶ 16, 32).  The two officers responded that Plaintiff's statement was unlawful.  (Tabi Decl. ¶ 16).

Thereafter, Officers Luzader and Stowell detained Plaintiff, asked him for identification, and "began what appeared to be a criminal investigation[.]"  (Tabi Decl. ¶¶ 17, 29).  Approximately 30 minutes later, Officers Luzader and Stowell ordered Plaintiff to leave the campus.  (Tabi Decl. ¶ 18).  Plaintiff then informed the two officers he intended to file a complaint with the College President, and the

---

[8](...continued)
fact that, according to Plaintiff, he had already received a free speech permit from the Office and was on his way to the free speech area when he encountered the Officers.  (See Tabi Decl., ¶¶ 9-10).

[9]Plaintiff describes the presence of the two officers as "derogatory, disparaging and defamatory" because "it created the false impression that [Plaintiff] had engaged in unlawful conduct, even though" Plaintiff had broken no law.  (Tabi Decl. ¶¶ 11-12).

two officers informed Plaintiff he could not see the President without an appointment and they would arrest him if he did not leave the campus immediately. (Tabi Decl. ¶¶ 18, 32).  The two officers subsequently followed Plaintiff and threatened to imprison him if he did not remove all his belongings, which included a table, chair, umbrella, umbrella stand, and several posters, in a single trip.  (Tabi Decl. ¶ 19).  Plaintiff told the Officers he could not move all his objects in a single trip, and elected to leave his table behind.  (Tabi Decl. ¶¶ 20, 32).

Lieutenant Baker joined Officers Luzader and Stowell while Plaintiff was retrieving his property.  (Tabi Decl. ¶ 20).  The Officers then followed Plaintiff to the parking lot "to intimidate, to terrorize, to devalue, to degrade and to destroy" Plaintiff as well as "to provoke [him] into dysfunctional behavior."  (Tabi Decl. ¶ 21).  During the walk, one of the Officers informed Plaintiff "'You have been banned[,]'" even though Plaintiff had committed no crime and was not accused of any crime or any other violation.  (Tabi Decl. ¶¶ 22-23, 29).

Plaintiff asserts he was never loud while at the College because he does "not argue with fools"; nor was he belligerent because it would have been against the law and suicidal.[10]  (Tabi Decl. ¶ 27).

## III.    DISCUSSION

### A.    Governing Standards

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict.  Anderson v. Liberty Lobby,

///

---

[10]Plaintiff contends the description of him as "loud, angry and belligerent" exemplifies the perpetuation of a racist characterization designed to prevent Plaintiff from exercising his constitutional rights.  (Tabi Decl. ¶¶ 26-28).

Inc., 477 U.S. 242, 250 (1986).  Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Id. at 250.

The moving party has the initial burden of identifying relevant portions of the record demonstrating the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Material facts are those which may affect the outcome of the case."  Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); In re Caneva, 550 F.3d 755, 760 (9th Cir. 2008).  "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party."  Long, 442 F.3d at 1185; Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  If the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing "there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party sustains its burden, the burden then shifts to the nonmovant to cite to "particular parts of materials in the record" demonstrating a material fact is "genuinely disputed" or to show that the materials the moving party cited do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at 324; Anderson, 477 U.S. at 256.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322; see also Anderson, 477 U.S. at 252 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson,

477 U.S. at 255); Groh v. Ramirez, 540 U.S. 551, 562 (2004).  However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (more than a "metaphysical doubt" is required to establish a genuine dispute of material fact).  "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

**B.     Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claims**

As indicated above, Plaintiff claims that Defendants retaliated against Plaintiff for exercising his right to free speech in violation of the First Amendment.

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech."  Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)).  "To recover under § 1983 for such retaliation, a plaintiff must prove:  (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.'"  Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022) (citation omitted); Moore v. Garnand, 83 F.4th 743, 750 (9th Cir. 2023), cert. denied, 144 S. Ct. 1098 (2024).

Defendants contend they are entitled to judgment as a matter of law on Plaintiff's First Amendment claims – the only claims remaining in this action – because "Plaintiff cannot present admissible evidence sufficient to create a triable issue of material fact with regard to any" element of a First Amendment retaliation

claim.[11]  (Mot. Memo at 1-2, 5-8).  Defendants base this argument on several assertedly undisputed facts:  (1) they are Campus Safety Officers who were working at Santa Ana College on February 15, 2018; (2) Lithia Williams called the Safety Department and complained Plaintiff was being loud, uncooperative, and disrupting the Office's orderly operation; and (3) Defendants responded to this call and ultimately ordered Plaintiff to leave the campus.[12]  (Mot. Memo at 1-2, 5-8; see

---

[11]While the evidence presented suggests Lieutenant Baker was less involved in the challenged incident than Officers Luzader and Stowell (see, e.g., Luzader Decl. ¶¶ 5-8; Tabi Decl. ¶¶ 10-33), Defendants do not attempt to distinguish between their alleged culpability for purposes of summary judgment and instead rely on arguments applicable equally to each officer. The Court limits its discussion to the arguments Defendants raise.

[12]It is undisputed that, in certain circumstances, campus security officers have the authority to order individuals to leave campus.  Indeed, Defendants cite several California Penal Code ("P.C.") sections to that effect.  (Mot. Memo at 4-5).

First, they cite P.C. § 626.4, which, at the time of the incident in question provided that "[t]he chief administrative officer of a campus or other facility of a community college . . . or an officer or employee designated by the chief administrative officer to maintain order on such campus or facility, may notify a person that consent to remain on the campus or other facility under the control of the chief administrative officer has been withdrawn whenever there is reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility."  P.C. § 626.4(a) (2018).  This section also requires that "[w]henever consent is withdrawn by any authorized officer or employee, other than the chief administrative officer, such officer or employee shall as soon as is reasonably possible submit a written report to the chief administrative officer" that contains "[t]he description of the person from whom consent was withdrawn, including, if available, the person's name, address, and phone number" and a "statement of the facts giving rise to the withdrawal of consent."  P.C. § 626.4(b) (2018).

Second, Defendants cite P.C. § 626.6, which at the time of the incident in question, provided:  "If a person who is not a student, officer or employee of a college or university and who is not required by his or her employment to be on the campus or any other facility owned, operated, or controlled by the governing board of that college or university, enters a campus or facility, and it reasonably appears to the chief administrative officer of the campus or facility, or to an officer or employee designated by the chief administrative officer to maintain order on the campus or facility, that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or has entered the campus or facility for the purpose of committing any such act, the chief administrative officer or his or her designee may

(continued...)

also Luzader Decl. ¶¶ 2-7). In particular, with regard to the first element of a retaliation claim, Defendants assert Plaintiff cannot present any evidence he actually engaged in free speech activities before Williams called for assistance, and since no "person has a First Amendment right to disrupt the orderly conduct of business at a public community college[,]" . . . [P]laintiff cannot establish that the activity in which he actually engaged, which led to him being ordered to leave the campus, was protected under the First Amendment." (Mot. Memo at 6). Second, Defendants argue that the "fact that disruptive conduct warranted temporary removal from the campus would not chill a reasonable, non-disruptive person from engaging in First Amendment activity." (Mot. Memo at 7). Third, Defendants maintain there is no evidence that any of them "knew, or had reason to know, that [P]laintiff intended to engage in protected activity, let alone that any such protected activity was a significant factor in any of the [Defendants'] decision to withdraw consent for [P]laintiff to remain on campus. Rather, the evidence in the record clearly supports the conclusion that [Defendants] withdrew consent based on Ms.

---

[12](...continued)
direct the person to leave the campus or facility. If that person fails to do so or if the person willfully and knowingly reenters upon the campus or facility within seven days after being directed to leave, he or she is guilty of a misdemeanor. . . ." P.C. § 626.6(a) (2018). Section 626.6(b) also provides that "[t]he provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly." P.C. § 626.6(b) (2018).

Defendants do not specify which – if either – of these statutes they relied on in ordering Plaintiff to leave campus. Assuming *arguendo* that Officers Luzader and Stowell were relying on one or both of these provisions when they "informed [Plaintiff] that consent for him to remain on . . . campus had been withdrawn," (Luzader Decl., ¶ 7), this does not resolve Plaintiff's First Amendment claims since "'[o]therwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.'" Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 869 (9th Cir. 2016) (quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016)); see also Hartzell v. Marana Unified Sch. Dist., 2023 WL 2425009, *5 (D. Ariz. 2023) ("Even if Plaintiff had no entitlement to be on campus, banning her from campus violated her First Amendment rights if Defendants did so with a retaliatory motive.").

11

Williams' report of [P]laintiff's disruptive behavior, as well as their own observations that [P]laintiff was loud, angry, and belligerent toward the officers." (Mot. Memo at 7). Fourth, Defendants conclusorily assert that "even if there were a triable issue of fact regarding the prima facie elements of [P]laintiff's First Amendment claim[,]" they "are entitled to summary judgment because they would have reached the same decision even in the absence of any protected activity."[13] (Mot. Mem. at 7-8).

Defendants' arguments are based solely on the evidence they presented in support of their summary judgment motion. But in considering the propriety of summary judgment, "[t]he evidence of [Plaintiff,] the non-movant[,] is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255; Hunt, 526 U.S. at 552; Groh, 540 U.S. at 562.

Here, Plaintiff has presented undisputed evidence that he went to Santa Ana College to collect signatures for California ballot measures (Tabi Decl. ¶¶ 4-5), which is an activity entitled to First Amendment protection.[14] See Morse v. Frederick, 551 U.S. 393, 403 (2007) ("Political speech, of course, is 'at the core of what the First Amendment is designed to protect.'" (citation omitted)); Pierce v. Jacobsen, 44 F.4th 853, 859 (9th Cir. 2022) ("Although there is no constitutional right to enact state laws or constitutional amendments through an initiative process, if a state allows for initiatives through a petitioning process, the gathering of

---

[13]In their Objections, Defendants argue the Court applied the incorrect causation standard. (Objections at 3-6). This is clearly incorrect given the Report and Recommendation's discussion of "but for" causation. (See Dkt. No. 160 at 16-17). Instead, the Objections make this argument by focusing on the Court's rejection of Defendants' conclusory argument that they would have reached the same result absent any protected activity. (See Objections at 3-6). The Court has attempted to clarify its discussion of causation to alleviate any confusion Defendants might have.

[14]In their Objections, Defendants argue there was no evidence they knew, or had reason to know, that Plaintiff intended to gather signatures. (Objections at 3). But a reasonable inference from Officer Luzader and Stowell's statement "'We will take you to the free speech area'" (Tabi Decl., ¶ 10) is that the Officers were aware Plaintiff intended to engage in free speech activities.

signatures and circulating of initiative petitions are protected by the First Amendment."); Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 896 (9th Cir. 2008) ("[T]he First Amendment plainly protects Plaintiff's activities – gathering signatures for a political petition and registering voters.").  It is also undisputed that, as part of Plaintiff's signature collection efforts, he went to the Office "to register to engage in free speech activities[,]" and that he did so because he was trying to comply with the College's rules and regulations.  (Tabi Decl. ¶¶ 4-5, 35).

Additionally, Plaintiff has presented evidence that Defendants banned him from the College only after he made statements criticizing them.  In particular, Officers Luzader and Stowell took Plaintiff to a secluded area and harassed and upbraided him for saying he did not want police officers around him and then, when Plaintiff told Officers Luzader and Stowell "'If you do not take me to the free speech area immediately, I will leave this place.  I did not come to this College so that I may be harassed and insulted by white Police Officers[,]'" Defendants responded that "'it was unlawful for [Plaintiff] to say those words.'"  (Tabi Decl. ¶¶ 14-16, 32).  "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987); Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th Cir. 1990); see also Hamilton v. City of San Bernardino, 325 F. Supp. 2d 1087, 1092 (C.D. Cal. 2004) ("There is a particularly pronounced constitutional interest in protecting speech critical of law enforcement.").  "'Speech is often provocative and challenging. . . .  [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'"  Hill, 482 U.S. at 461 (quoting Terminiello v. Chicago, 337 U.S. 1, 4 (1949)); see also id. at 462-63 ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police

state."); Duran, 904 F.2d at 1377 ("[C]riticism of the police is not a crime."); id. at 1378 ("[A]n expression of disapproval toward a police officer with whom [a plaintiff] had just had a run-in" falls "squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech – such as stopping or hassling the speaker – is categorically prohibited by the Constitution.").

Given the evidence presented, "Plaintiff has set forth sufficient evidence supporting the first element of his First Amendment retaliation claim to withstand summary judgment." Adams v. Kraft, 828 F. Supp. 2d 1090, 1111 (N.D. Cal. 2011); Dietrich, 548 F.3d at 899; Duran, 904 F.2d at 1378.

As for the second element of a retaliation claim, the test for whether a defendant's actions would chill a person of ordinary firmness from engaging in protected activities "is generic and objective.  Whether [Plaintiff] himself was, or would have been, chilled is not the test." O'Brien v. Welty, 818 F.3d 920, 933 (9th Cir. 2016); see also Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity[.]").  Here, Plaintiff has presented evidence that in response to his protected activities, Officers Luzader and Stowell asked Plaintiff for his identification, detained him for approximately 30 minutes while conducting "what appeared to be a criminal investigation" and then ordered Plaintiff to leave the campus.[15]  (Tabi Decl. ¶¶ 17-18, 29).  When Plaintiff informed Officers Luzader and Stowell that he intended to file a complaint with the College President and would go to the President's office to make an appointment, the Officers told Plaintiff he would be arrested if he did not leave campus immediately.  (Tabi Decl. ¶ 19).  Thereafter, Defendants threatened to imprison Plaintiff if he did not remove

---

[15]Officer Luzader disputes Plaintiff's version of events, stating Plaintiff "was not arrested or detained at any time."  (Luzader Decl. ¶ 9).

all his property from campus in a single trip and informed Plaintiff he was banned from the College.[16]  (Tabi Decl. ¶¶ 19-20, 22, 29, 32).  Based on this evidence, a reasonable factfinder could conclude Defendants' actions would chill a person of ordinary firmness from continuing to exercise his First Amendment rights.  Reed v. Lieurance, 863 F.3d 1196, 1212 (9th Cir. 2017); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) ("Informal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment. . . ." (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963)); Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1056 (7th Cir. 2004) (A "realistic threat of arrest is enough to chill First Amendment rights."); Doe v. City of San Diego, 198 F. Supp. 3d 1153, 1162 (S.D. Cal. 2016) ("Show of government force, including, as here, threat of arrest, chills the exercise

---

[16]Defendants argue that, "as a matter of law, the withdrawal of consent was only temporary, lasting no more than 14 days."  (Mot. Memo at 7); see also P.C. § 626.4(c) (2018) ("In no case shall consent be withdrawn for longer than 14 days from the date upon which consent was initially withdrawn.").  However, there is no evidence Defendants relied on any particular section of the penal code to ban Plaintiff from campus.  Nor is there any evidence Defendants informed Plaintiff of the limited duration of the ban.

Moreover, while Defendants assert that "Plaintiff could have requested immediate reinstatement of consent by demonstrating that he would no longer engage in disruptive conduct and [he] would thus have been free to resume any and all activities which were actually protected under the First Amendment" (Mot. Memo at 7), this presupposes that Plaintiff was engaged in disruptive conduct, which is a disputed issue.  Defendants' argument also does not grapple with Plaintiff's statement that Defendants threatened to arrest him when he attempted to visit the College President to challenge the ban.  (Tabi Decl. ¶ 18); see also P.C. § 626.4(d) (2018) ("Any person who has been notified by the chief administrative officer of a campus or other facility of a community college, . . . or by an officer or employee designated by the chief administrative officer to maintain order on such campus or facility, that consent to remain on the campus or facility has been withdrawn pursuant to subdivision (a); who has not had such consent reinstated; and who willfully and knowingly enters or remains upon such campus or facility during the period for which consent has been withdrawn is guilty of a misdemeanor.  This subdivision does not apply to any person who enters or remains on such campus or facility for the sole purpose of applying to the chief administrative officer for the reinstatement of consent or for the sole purpose of attending a hearing on the withdrawal.").

15

of First Amendment rights."); Daniels v. Dixon, 2021 WL 4468940, *11 (C.D. Cal. Aug. 13, 2021) (prolonging a detention and threatening to arrest a person are "sufficient to chill a person of ordinary firmness"), report and recommendation accepted, 2021 WL 6499941 (C.D. Cal. Sept. 28, 2021); Davis v. Los Angeles Police Captain Paul Vernon, 2018 WL 11314966, *3 (C.D. Cal. Apr. 19, 2018) ("Defendant's threat of arrest for Plaintiffs' engagement in First Amendment activities plausibly would chill an ordinary person's speech."); Martinez v. Valdez, 2018 WL 6016969, *5 (C.D. Cal. Mar. 22, 2018) ("A police officer investigating or arresting someone meets [the chilling effect] standard.  Express or implied threats may also have a chilling effect, even if not carried out." (citation omitted)); Knotts v. Oregon Trail Sch. Dist. 46, 2017 WL 4861521, *7 (D. Ore. Oct. 26, 2017) ("reasonable jurors could conclude that [the defendant's] actions [in asking the plaintiff to leave a school event] . . . could chill the exercise of protected expression" since the defendant made the request "with security personnel present," and the "security presence could be intimidating").

Regarding the third element, "[t]o ultimately prevail on . . . a [retaliation] claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (citation and internal quotation marks omitted); Nieves, 587 U.S. at 398-99.  "Specifically, a plaintiff must show that the defendant's retaliatory animus was a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  Capp, 940 F.3d at 1053 (citation and internal quotation marks omitted); see also Nieves, 587 U.S. at 398-99 ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the

///

16

retaliatory motive." (quoting Hartman, 547 U.S. at 259-60); italics in original))."[17] "A plaintiff may establish motive using direct or circumstantial evidence." Arizona Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 870 (9th Cir. 2016); The Koala v. Kholsa, 931 F.3d 887, 905 (9th Cir. 2019); see also Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002) ("As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence, and involves questions of fact that normally should be left for trial." (citation omitted)). Circumstantial evidence may include "proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." Boquist v. Courtney, 32 F.4th 764, 777 (9th Cir. 2022).

Here, Plaintiff's evidence demonstrates that after he complained that "white Police Officers" Luzader and Stowell were harassing him, the two officers replied

---

[17]In Nieves, the Supreme Court held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." Nieves, 587 U.S. at 402; see also Hartman, 547 U.S. at 265-66 (In retaliatory prosecution cases, "an absence of probable cause . . . must be pleaded and proven."). In their Reply, Defendants for the first time argue that Nieves's probable cause standard applies to this case. (See Reply at 3-4). They reiterate this argument in their Objections, contending that since P.C. §§ 626.4 and 626.6 use language similar to the probable cause standard in withdrawing consent to remain on campus, "[t]he Court must apply the objective *Nieves* standard." (Objections at 5). However, because Defendants first raised this argument in their Reply, the Court will not consider it. See Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."); Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). In any event, this case involves neither a retaliatory arrest nor a retaliatory prosecution, and Defendants cite no authority demonstrating that Nieves extends to ordering Plaintiff to leave campus. Cf. Bello-Reyes v. Gaynor, 985 F.3d 696, 701 (9th Cir. 2021) ("*Nieves* does not apply here because it arose out of the criminal arrest context. . . ."); Colonies Partners LP v. Cnty. of San Bernardino, 2020 WL 5102160, *22 (C.D. Cal. 2020 ("The Court rejects Defendants' argument that Plaintiffs must establish a lack of probable cause in order to satisfy the but-for causation prong of their retaliation claims. It would be incongruous to extend Hartman and Nieves's severe rule on causation to officials' investigative or administrative acts."), affirmed by, Erwin v. Ramos, 2022 WL 541188 (9th Cir. 2022).

that it was "unlawful" for Plaintiff to say that, asked him for his identification, detained him for thirty minutes and then ordered him to leave the Santa Ana College campus. Furthermore, when Plaintiff responded he intended to file a complaint with the College President and would go to the President's office to make an appointment, the Officers told Plaintiff he would be arrested if he did not leave campus immediately and did not remove all his property from campus in a single trip. Thereafter, Defendants banned Plaintiff from the College.[18] Not only is this evidence sufficient for a reasonable jury to determine that Plaintiff's protected activity was a substantial or motivating factor for Defendants' actions, it is also more than "sufficient evidence for a jury to conclude that [the Officers'] 'desire to chill [Plaintiff's protected activity] was a but-for cause of'" the actions they took against him. Reed, 863 F.3d at 1212 (citations omitted); see also Lacey v. Maricopa Cnty., 693 F.3d 896, 917 (9th Cir. 2012) (en banc) (proximity in time supports an inference that the motive was unconstitutional retaliation); Mendocino Env't Ctr., 192 F.3d at 1302 (Questions "'involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment.'" (citation omitted)); Duran, 904 F.2d at 1378 ("Because [Officer] Aguilar might have detained Duran in retaliation for engaging in . . . protected speech and conduct, summary judgment in favor of Aguilar would have been inappropriate.").

///

---

[18]This evidence also contradicts Defendants' argument that "[t]here is no evidence that any of [the Defendants] knew, or had reason to know, that [P]laintiff intended to engaged in protected activity[.]" (Mot. Memo at 7). As for Defendants' other argument on motive, it is a disputed issue of material fact as to whether Plaintiff "was loud, angry, and belligerent toward" them (Mot. Memo at 7). (Compare Luzader Decl. ¶ 5 (Plaintiff "was uncooperative and would not listen to anything that Officer Stowell and I said. [Plaintiff] was loud, angry and belligerent toward Officer Stowell and me.") with Tabi Decl. ¶ 27 (Plaintiff "was never loud at Santa Ana College" nor was he belligerent)). Moreover, "'[t]he possibility that other inferences could be drawn [regarding Defendants' motivations] that would provide an alternate explanation for [their] actions does not entitle them to summary judgment." Ballentine, 28 F.4th at 63 (quoting Mendocino Env't Ctr., 192 F.3d at 1303).

Defendants disagree. They argue that even if there is a triable issue of fact as to whether Plaintiff's protected activity was a substantial or motivating factor in their conduct, they are still "entitled to summary judgment because they would have reached the same decision even in the absence of any protected activity" and, therefore, there is no but-for causation. (Mot. Memo at 7-8). Defendants assert that "Ms. Williams' report alone was sufficient cause to justify withdrawing consent for [P]laintiff to remain on campus, and it occurred *before* any of the [Defendants] had ever interacted with [P]laintiff. Therefore, the evidence reasonably supports the conclusion that [Defendants] would have reached the same decision, irrespective of any protected activity by [P]laintiff." (Mot. Memo at 8 (italics in original)).

When, as here, the plaintiff establishes the elements of a retaliation claim, "the burden shifts to the [defendants] to show that [they] 'would have taken the same action even in the absence of the protected conduct.'" O'Brien, 818 F.3d at 932 (quoting Pinard v. Clatskanie Sch. Dist. 6J,, 467 F.3d 755, 770 (9th Cir. 2006)); Bello-Reyes v. Gaynor, 985 F.3d 696, 702 (9th Cir. 2021); see also Hartman, 547 U.S. at 260 ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). However, "the defendants must show more than that they '*could* have' punished the plaintiff[] in the absence of the protected speech; instead, 'the burden is on the defendants to show' through evidence that they '*would* have' punished the plaintiff[] under those circumstances." Pinard, 467 F.3d at 770 (citation omitted; italics in original); Bello-Reyes, 985 F.3d at 702.

Defendants have failed to meet their burden. Dousa v. U.S. Dep't of Homeland Sec., 662 F. Supp. 3d 1123, 1150 (S.D. Cal. 2023). Their argument is entirely conclusory. See Hardy v. 3 Unknown Agents, 690 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (conclusory allegations are insufficient to support summary

judgment (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)); Synthes, Inc. v. Knapp, 250 F. Supp. 3d 644, 654 (E.D. Cal. 2017) ("conclusory statement[s] [are] insufficient to support summary judgment"). They cite no evidence demonstrating they would have reached the same decision absent Plaintiff's protected activity. At best, Defendants' conclusory argument suggests they *could* have asked Plaintiff to leave the College based on Williams' complaints. But, again, there is absolutely no evidence in the record suggesting that they *would* have done so. To the contrary, according to Plaintiff, he had been granted approval to circulate ballot measures in the College's free speech area and was leaving the Office when he encountered Defendants. (Tabi Decl. ¶¶ 9-10). Instead of asking Plaintiff to leave the area or discussing a purported disturbance with him, Defendants told Plaintiff they would take him to the free speech area and, when Plaintiff stated he did "'not want the police around me[,]'" Defendants took Plaintiff to a secluded area opposite the free speech area, harassed him, and told him "it was wrong for [him] to say '[he] did not want the police around [him].'" (Tabi Decl. ¶¶ 10, 13-14, 30). It was not until Plaintiff objected to this treatment and said "'If you do not take me to the free speech area immediately, I will leave this place. I did not come to this College so that I may be harassed and insulted by white Police Officers[,]'" that Defendants asked for Plaintiff's identification, detained him and ultimately banned him from campus and threatened to arrest him. (Tabi Decl. ¶¶ 16-19, 30). In short, Defendants have not established they would have taken the same actions regardless of Plaintiff's protected activities, and to the extent they have shown they could have done so, "this is insufficient to support summary judgment." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315 (9th Cir. 1989); Ballentine, 28 F.4th at 63-64. Therefore, as explained herein, there is a genuine issue of material fact as to whether Defendants' retaliatory motive was "a 'but-for' cause" of "the adverse action [taken] against" Plaintiff. Nieves, 587 U.S.

///

at 399; Reed, 863 F.3d at 1212; Lacey, 693 F.3d at 917; Mendocino Env't Ctr., 192 F.3d at 1302; Duran, 904 F.2d at 1378.

Accordingly, for the reasons discussed herein, genuine issues of material fact preclude granting Defendants summary judgment on Plaintiff's retaliation claim.

**C.     Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Claims**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Ortiz v. Jordan, 562 U.S. 180, 183 (2011). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231; see also V-1 Oil Co. v. Smith, 114 F.3d 854, 857 (9th Cir. 1997) ("Through the application of the qualified immunity doctrine, public servants avoid 'the general costs of subjecting officials to the risks of trial - distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" (quoting Harlow, 457 U.S. at 816)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 555 U.S. at 231 (citations omitted).

To determine whether a government official is entitled to qualified immunity, the court must ascertain: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right"; and (2) "whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by, Pearson v.

Callahan, 555 U.S. 223 (2009).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam).

Defendants conclusorily argue they are entitled to qualified immunity based on the report they received that Plaintiff was being loud and disruptive.  (Mot. Memo at 9).  The Court disagrees.

As detailed above, "[v]iewing the evidence and drawing all reasonable inferences in the favor of Plaintiff[], a jury could conclude that [Defendants] violated Plaintiff['s] First Amendment rights.  Accordingly, Plaintiff[] ha[s] raised a genuine dispute of material fact as to whether [his] constitutional right was violated and [has] satisfied [the first] part of the qualified immunity inquiry." Ballentine, 28 F.4th at 64; see also Tolan, 572 U.S. at 656 (In addressing qualified immunity on summary judgment, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (per curiam) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (citation omitted); Taylor v. Barkes, 575 U.S. 822, 825 (2015) (per curiam).  "In other words 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  Carroll v. Carman, 574 U.S. 13, 16-17 (2014) (per curiam) (citation omitted); Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per curiam).  The "rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.]"  District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (citations and internal quotation marks omitted); see also Gordon v. Cnty. of Orange, 6 F.4th 961, 969 (9th Cir. 2021) ("Ultimately, the prior precedent must be controlling – from the Ninth Circuit or Supreme Court – or

otherwise be embraced by a consensus of courts outside the relevant jurisdiction." (citation and internal quotation marks omitted)).  While Plaintiff "'bears the burden of showing that the right[] allegedly violated [was] clearly established[,]'" Gordon, 6 F.4th at 969 (quoting Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017), cert. denied, 584 U.S. 1002 (2018)); Emmons v. City of Escondido, 921 F.3d 1172, 1174 (9th Cir. 2019) (per curiam), "because resolving whether the asserted federal right was clearly established presents a pure question of law, [the Court] draw on [its] 'full knowledge' of relevant precedent rather than restricting our review to cases identified by the plaintiff."  Gordon, 6 F.4th at 969 (quoting Elder v. Holloway, 510 U.S. 510, 516 (1994)).

In the Ninth Circuit, "[p]olice officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech."[19]  Ford v. City of Yakima, 706 F.3d 1188, 1195 (9th Cir. 2013) (per curiam) (citing Duran, 904 F.2d at 1375-78), abrogated in part on other grounds, Nieves v. Bartlett, 587 U.S. 391 (2019); see also id. at 1196 ("Duran clearly established that police officers may not use their authority to punish an individual for exercising his First Amendment rights[.]"); Beck v. City of Upland,

---

[19]In their Objections, Defendants argue they are entitled to qualified immunity because the cases the Court cites predate Nieves and Nieves abrogated every retaliation case that came before it.  (See Objections at 6-7 ("All of the cases cited in the qualified immunity analysis predated *Nieves* and have therefore been abrogated.")).  Defendants cite no authority for this proposition, which is without merit.  Indeed, courts have continued to rely on cases such as Duran to deny qualified immunity post-Nieves.  See, e.g., Lopez v. City of Glendora, 811 F. App'x 1016, 1018-19 (9th Cir. 2020); Savage v. City of Whittier, 2023 WL 6193035, *19 (C.D. Cal. 2023); Badalyan v. City of Glendale, 2021 WL 8892814, *6 (C.D. Cal. 2021); Baca v. Anderson, 2022 WL 7094267, *6 (N.D. Cal. 2022); Albanese v. City of Oroville, 2022 WL 7093373, *7 (E.D. Cal. 2022); see also Klug v. Clark Cnty., 2021 WL 2404180, *7-8 (W.D. Wash. Mar. 3, 2021) ("[T]he Ninth Circuit has held that it is clearly established that a police officer retaliating against a citizen for perceived disrespect toward police by detaining that person violates the First Amendment. Defendants' argument to the contrary is premised on the facts in the light most favorable to them – not to plaintiff – and is not persuasive. (citations omitted)), report and recommendation adopted by, 2021 WL 2071249 (W.D. Wash. May 24, 2021).

527 F.3d 853, 871 (9th Cir. 2008) ("By 1990, it was 'well established . . . that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows – or should know – that much.'" (quoting Duran, 904 F.2d at 1378)); Duran, 904 F.2d at 1378 ("Whether or not officer Aguilar was aware of the fine points of First Amendment law, to the extent he is found to have detained Duran as punishment for the latter's insults, we hold that he ought to have known that he was exercising his authority in violation of well-established constitutional rights."); Addison v. City of Baker City, 758 F. App'x 582, 583-84 (9th Cir. 2018) ("The district court correctly concluded that Addison's right to be free from adverse police action in retaliation for constitutionally protected speech is clearly established."). Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment claims.[20] See Ballentine, 28 F.4th at 64 ("'If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end.'" (quoting Boyd v. Benton Cnty., 374 F.3d 773, 781 (9th Cir. 2004)).

**D.    Defendants Are Not Entitled to Summary Judgment On Plaintiff's Request for Punitive Damages**

Punitive damages may be awarded in a Section 1983 suit "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

---

[20]In their Reply, Defendants cite Guengerich v. Baron, 2011 WL 13116612 (C.D. Cal. May 5, 2011), in support of their argument that they are entitled to qualified immunity. (Reply at 4-5). Guengerich involved a group of demonstrators who were arrested pursuant to P.C. § 626.6 after they refused to move to a College campus's designated free speech area. Id. at *2-3. Guengerich is inapposite. Guengerich did not involve a retaliation claim, but, as relevant here, addressed the issue of qualified immunity in relation to the plaintiffs' claim that the defendants violated plaintiffs' Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure by arresting them. Id. at 7-10.

Smith v. Wade, 461 U.S. 30, 56 (1983). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," and extends to "malicious, wanton, or oppressive acts or omissions." Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

Here, based on a conclusory recitation of the evidence most favorable to them, Defendants contend they are entitled to summary judgment on Plaintiff's claim for punitive damages. (Mot. Memo at 9-10). However, the Court "is not inclined to take the question of punitive damages out of the factfinder's hands where there are still viable claims for . . . an intentional effort to chill/retaliate against Plaintiff's exercise of [his] rights under the First Amendment." Smith v. Cnty. of Orange, 678 F. Supp. 3d 1182, 1215 (C.D. Cal. 2023) (citation omitted), appeal dismissed by, Smith v. Packham, 2023 WL 9291578 (9th Cir. Dec. 6, 2023); see also Fortson v. City of Los Angeles, 628 F. Supp. 3d 976, 995 (C.D. Cal. 2022) (denying motion for summary judgment on punitive damages when there was a disputed issue of material fact as to plaintiff's claim that the defendant police officers retaliated against her). "Accordingly, the Court [should deny the Officers'] motion for summary judgment as to Plaintiff's request for punitive damages." Smith, 2023 WL 4680798 at *20; Fortson, 628 F. Supp. 3d at 995.

## IV.   RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Judge issue an Order:  (1) approving and accepting this Amended/Superseding Report and Recommendation; and (2) denying Defendants' Motion for Summary Judgment.

DATED:   June 5, 2024

_____ /s/ _____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

25